UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TASHIAN SCOTT,<br>  Plaintiff,<br>   v.<br>CREDICO (USA) LLC, et al.,<br>  Defendants. | Case No. 17-cv-02846-EMC<br><br>**ORDER REMANDING CASE**<br>Docket Nos. 53-54 |

This case was removed from the Alameda County Superior Court on May 18, 2017, *see* Docket No. 1, and came before the Court for hearing on Defendants' motion to dismiss, *see* Docket No. 15, and motion to compel arbitration, *see* Docket No. 19, on August 17, 2017. *See* Docket No. 48. At the hearing, the Court, *sua sponte*, expressed its concern that it may lack subject matter jurisdiction under the Class Action Fairness Act ("CAFA"), codified at 28 U.S.C. § 1332(d), and ordered supplemental briefing. *See* Docket No. 48. Defendants contend that the CAFA requirements are likely met, but may be lacking depending on how the Court calculates the amount in controversy and estimates attorneys' fees. *See* Docket No. 53. Plaintiff agrees that the CAFA requirements are met. *See* Docket No. 54. However, because subject matter jurisdiction cannot be a product of consent, the Court is obligated to review the matter independently. *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982). For the reasons stated below, the Court concludes that the CAFA requirements are not met, and thus **REMANDS** the case to Alameda County Superior Court.

## I.    BACKGROUND

Plaintiff Tashian R. Scott brought this action against Defendants Sprint Corporation, Sprint/United Management Corporation, Legion, Latitude Group, Credico (USA) LLC ("Credico"), and Alon Brener on behalf of himself and a putative class of similarly situated

1 employees, alleging several violations under the California Labor Code and California Business
2 and Professions Code, in Alameda County Superior Court. Defendants removed to federal court.
3 Plaintiff later clarified that the proposed class, as defined in the complaint, is limited to those
4 employees jointly employed by Credico, Sprint/UMC, and Latitude, rather than including those
5 employed by any one of Defendants. Docket No. 46 at 2. On that basis, the Court was concerned
6 that it may lack subject matter jurisdiction and ordered the parties to meet-and-confer and to file
7 supplemental briefs addressing the issue. Docket No. 48.

Defendants have submitted uncontested evidence that the size of the class is approximately 246 individuals. Brener Decl. ¶¶ 7-8. In 2014-2015, approximately 71 class members worked approximately 1,019 weeks. *Id.* ¶ 7. In 2016-2017, approximately 175 individuals worked approximately 1,510 weeks. *Id.* ¶ 8. On this foundation, Defendants estimate the total amount in controversy based on the allegations in Plaintiff's complaint. In relevant part, Plaintiff alleges that employees were required to be at work at 7:00 a.m. for 2-3 hour training and to check-out with supervisors around 6:30 p.m. Compl. ¶¶ 11, 19. Thus, Plaintiff alleges that when employees worked, they had an 11.5-hour workday, *id.* ¶¶¶ 11, 19, 23, that Defendants never paid overtime, *id.* ¶ 22, that employees missed meal and rest breaks for the entire class period because it was impossible to take meal or rest breaks, *id.* ¶¶ 23, 26, and that rest breaks were not separately paid on wage statements notwithstanding piece-rate pay, *id.* ¶ 25. Thus, for purposes of projecting the amount in controversy, Defendants assume that employees worked an average of 5 days per week and 11.5 hours per day. Docket No. 53-1 ¶ C.1. Defendants used $9.00 as the minimum wage rate from January 1, 2014-December 31, 2015 and $10.00 for January 1, 2016 to the present. *Id.* ¶ C.2.

Based on these assumptions, Defendants estimate the amount in controversy as follows.

**Unpaid Wages**: Defendants multiplied the number of workweeks by 40 hours per week at the regular rate of pay and 17.5 hours per week at an overtime rate. Docket No. 53-1 ¶¶ D.1.a-b. Defendants estimate that the total wage claim (including base pay and overtime) is $1,607,953.70. *Id.* ¶ D.1.c.

**Liquidated Damages:** This is equivalent to the wages due, or $1,607,953.70. *Id.* ¶ D.2.

**Penalties:** Defendants include the following penalties alleged by Plaintiff.

1. **Section 558 Penalty**: Estimating 246 initial violations and 2,283 subsequent violations, Defendants calculate $240,600.00 in penalties. *Id.* ¶ D.3.
2. **Section 1197.1 Unpaid Wages Penalty**: Estimating 246 initial violations and 2,024 subsequent violations, the total penalties are estimated at $593,350.00. *Id.*
3. **Section 226.7 Meal & Rest Premiums**: Multiplying the number of workweeks by the number of breaks owed per day by the applicable rate of pay, the estimated premiums are $242,710.00. *Id.*
4. **Waiting Time Penalties**: The total waiting time penalties are estimated at $949,627.50. *Id.*

**Attorneys' Fees:** Defendants estimate attorneys' fees at 25% of potential liability, or $1,485,548.37.

Based on these calculations, Defendants estimate the total amount in controversy is $7,427,741.87. *See* Docket No. 53-1 ¶ E.

## II. DISCUSSION

A. Legal Standard

It is Defendants' burden to establish jurisdiction under CAFA. *See Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 685 (9th Cir. 2006). To do so, they must show that: (1) the class consists of at least 100 individuals; (2) the amount in controversy exceeds $5,000,000; and (3) at least one defendant is diverse from at least one member of the plaintiff class. *See* 28 U.S.C. §§ 1332(d)(2), (5).

B. Size of Class

Defendants present uncontested evidence that the class consists of approximately 246 individuals. Brener Decl. ¶¶ 7-8. Thus, this jurisdictional requirement is met.

C. Diversity

Defendant Credico is a Delaware corporation with its principal place of business in Chicago, Illinois. Notice to Remove, Docket No. 1 ¶ 18; Clark Decl., Docket No. 1-7 ¶ 2. Plaintiff is a citizen of California. Docket No. 1 ¶ 17. The diversity requirement is met.

D. <u>Amount in Controversy</u>

Defendants must demonstrate with a preponderance of the evidence that the amount in controversy exceeds $5 million because Plaintiff's complaint does not allege a specific amount. *See Lewis v. Verizon Communications, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). As demonstrated below, Defendants have not met their burden to demonstrate that the amount in controversy exceeds $5,000,000.

1. <u>Gross Wages v. Net Wages</u>

Defendants present a calculation of "gross wages" based on the total number of hours worked per week by putative class members, the number of work-weeks, and the applicable wage rate (including variations of the minimum wage over time, and overtime v. regular time rates). Defendants acknowledge, however, that they have already paid class members approximately $950,000 as compensation for their work, Brener Decl. ¶¶ 9-10. The amount in dispute and the wages sought in this suit are *unpaid* overtime wages. *See Combined Communications Corp. v. Seabord Sur. Co.*, 641 F.2d 743, 744 n.1 (9th Cir. 1981) (counting only disputed sums of money in assessing amount in controversy). The amount of unpaid overtime wages in dispute is $657,953.70 (Total wages of $1,607,953.70 minus $950,000 wages paid). *See* Brener Decl. ¶¶ 9-10.

Defendants and Plaintiff cite *Lewis* for the proposition that "[t]he amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability," 627 F.3d at 400. However, *Lewis* does not support the notion that gross wages (paid and unpaid) should be used even when Plaintiff seeks recovery of only unpaid wages. In *Lewis*, plaintiffs had challenged the defendant's collection of "unauthorized billings" for services never ordered. *Id.* at 359-400. The defendant used the total fees paid by putative class members to calculate the amount in controversy. The plaintiffs did "not attempt[] to demonstrate, or even argue, that the claimed damages [were] less than the total billed." *Id.* at 400. Yet the district court assumed that the "unauthorized billings" would be less than the total billings. *Id.* The Ninth Circuit rejected this reasoning, finding that "[t]he district court . . . erred in assuming, without pleading or proof, that some significant portion of the total billings were 'authorized' and separate

4

from the damages the [p]laintiff seeks." *Id.* at 401-402. Hence, there was no basis for discounting the amount in controversy. In this case, Plaintiff does not claim that class members were not paid for *any* of their work. Rather, Plaintiff claims they were not paid for overtime or for meal and rest breaks, and Plaintiff seeks recovery of only unpaid wages. Unlike *Lewis*, the Court is not simply *assuming* without basis that some amount less than the gross wages are in dispute; Defendants' uncontested evidence establishes wages were paid and that Plaintiff is only seeking to recover *unpaid* wages, not total gross wages.

### 2. Section 558 Penalties

Defendants also count $240,600 in penalties pursuant to Labor Code section 558. That section subjects employers who violate, or cause to be violated, any order of the Industrial Welfare Commission to civil penalties. Cal. Labor Code § 558(a). However, Section 558 "does not create a private right of action," and "is limited to authorizing the Labor Commissioner to impose penalties for violations of the labor code." *Renazco v. Unisys Tech. Servs., L.L.C.*, No. C-14-4204 EMC, 2014 WL 6882589, at *3 (N.D. Cal. Dec. 5, 2014). Although "[t]here is an argument that a claim brought under [California's Private Attorney General Act] would allow a private plaintiff" to seek Section 558 penalties, *id.*, here, Plaintiff has not asserted a PAGA claim. Accordingly, they may not be included in the amount-in-controversy.

### 3. Summary of Damages in Dispute

The revised calculation for damages, excluding Section 558 penalties and accounting only for unpaid wages, is reflected below:

| **Category** | **Amount** |
|---|---|
| Unpaid Wages | $ 657,953.70 |
| Liquidated Damages | $ 657,953.70 |
| Section 1197.1 Unpaid Wage Penalties | $ 593,350.00 |
| Section 226.7 Meal and Rest Break Premium | $ 242,710.00 |
| Section 226(e) Wage Statement Penalties | $ 700,000.00 |
| Waiting Time Penalties | $ 949,627.50 |
| **Total:** | $3,801,594.90 |

5

#### 4. Attorney Fees

Defendants seek to add attorneys' fees of 25% of recovery to boost the amount in controversy. The argument lacks merit. It is true that the Ninth Circuit uses a 25% benchmark to estimate what portion of a common fund may be recovered by attorneys whose efforts successfully secure the fund, *see Staton v. Boeing Co.*, 327 F.3d 938, 968 (9th Cir. 2003), but that is not the correct method for estimating attorneys' fees when determining whether a jurisdictional amount-in-controversy threshold is satisfied. *See* Fed. Prac. & Proc. § 3704.2 (discussing "cases concluding that attorneys' fees paid from a common fund recovery cannot be considered for amount in controversy purposes because they are not damage elements, do not enhance any plaintiff's claim against any defendant, and actually are deducted from the common fund.").

Because contingency fees based on a common fund recovery are not damages, they should not be counted as part of the amount in controversy. Rather, for purposes of calculating the amount in controversy, attorneys' fees should only be counted if "an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language." *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998). Here, Plaintiff does seek an award of attorneys' fees for which there is a statutory basis for fee shifting. *See* Complaint, Prayer for Relief ¶ 9 (Docket No. 1-2 at 27) (seeking reasonable attorneys' fees and costs pursuant to Cal. Labor Code §§ 218.5, 226, 1194, and 2802, and Cal. Code Civ. Proc. § 1021.5). Such fees to be properly considered as part of the amount in controversy should be calculated based on the number of hours worked at a reasonable hourly rate (*i.e.*, the lodestar). *See Winterrowd v. Am. Gen. Annuity, Ins. Co.*, 556 F.3d 815, 826-27 (9th Cir. 2009).

There is a split of authority regarding whether the fees should be determined as of the time a complaint is filed, as of the time of removal, or through an estimate of fees likely to be recovered once the matter is resolved. *Renazco v. Unisys Tech. Servs., L.L.C.*, No. C-14-4204 EMC, 2014 WL 6882589 at *5 (N.D. Cal. Dec. 5, 2014); *Brown v. Chipotle Mexican Grill, Inc.*, No. 16-cv-00174-EMC, 2016 WL 3402619, at *1 n.1 (N.D. Cal. Jun. 21, 2016). Even assuming that the largest estimate applies, *i.e.*, fees likely to be recovered upon resolution, Defendants have failed to present any evidence to support an estimate of attorneys' fees that Plaintiff might recover based on

a projected lodestar.  Nor have Defendants presented a basis for the Court to conclude that a 25% benchmark provides a reasonable proxy for the lodestar estimate.  In any event, even if 25% were deemed a reasonable proxy for statutory fees, the total recovery including fees would be $4,751,993.70 – still short of the $5 million threshold.

Accordingly, Defendants have not demonstrated, by a preponderance of the evidence, that the amount in controversy exceeds $5 million.

### III. CONCLUSION

For the reasons herein stated, the Court concludes that it lacks jurisdiction under CAFA because the amount in controversy does not exceed $5 million.  Lacking subject matter jurisdiction, the Court is also without power to resolve Defendants' pending motions to dismiss and to compel arbitration.  *See* Docket Nos. 15 and 19.  It must instead **REMAND** the matter to the Alameda County Superior Court.

**IT IS SO ORDERED**.

Dated: September 22, 2017

_____
EDWARD M. CHEN
United States District Judge